UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

JAN 1 4 2013

David J. Bradley, Clerk of Court

**13 MC 5 5**

**H-13-106**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. _____ |
| GOLDMAN SCHWARTZ INC, a corporation, also d/b/a Goldman, Schwartz, Lieberman & Stein, | ) |
| DEBTCOM, INC., a corporation, also d/b/a Cole, Tanner, & Wright, | ) |
| HARRIS COUNTY CHECK RECOVERY INC., a corporation, | ) **UNDER SEAL** |
| THE G. WRIGHT GROUP INC., a corporation, also d/b/a The Wright Group, | ) |
| GERALD WRIGHT,  a/k/a Barry Schwartz, | ) |
| STARLETTE FOSTER, a/k/a Star Foster, and | ) |
| JENNIFER ZAMORA, | ) |
| Defendants. | ) |

## PLAINTIFF FEDERAL TRADE COMMISSION'S
## COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF

Plaintiff, the Federal Trade Commission (Commission), for its Complaint alleges:

1.      The Commission brings this action under Sections 13(b) and 19 of the Federal

Trade Commission Act (FTC Act), 15 U.S.C. §§ 53(b) and 57b, and Section 814 of the Fair Debt

Collection Practices Act (FDCPA), 15 U.S.C. § 1692*l*, to obtain temporary, preliminary, and

permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of

monies paid, disgorgement of ill-gotten monies, and other equitable relief for Defendants' acts or

practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the FDCPA, 15

U.S.C. § 1692 *et seq.*

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1337(a), and

1345, and 15 U.S.C. §§ 45(a), 53(b), 57b, and 1692*l*(a).

3.      Venue is proper in this district under 28 U.S.C. § 1391(b) and (c), and 15 U.S.C.

§ 53(b).

## PLAINTIFF

4.      The Commission is an independent agency of the United States Government

created by statute. 15 U.S.C. §§ 41-58. The Commission enforces Section 5(a) of the FTC Act,

15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.

The Commission also enforces the FDCPA, 15 U.S.C. § 1692 *et seq.*, which prohibits deceptive,

abusive, and unfair collection practices. 15 U.S.C. § 1692*l*.

5.      The Commission is authorized to initiate federal district court proceedings, by its

own attorneys, to enjoin violations of the FTC Act and the FDCPA, and to secure such equitable

relief as may be appropriate in each case, including rescission or reformation of contracts,

restitution, the refund of monies paid, and the disgorgement of ill-gotten monies. 15 U.S.C.

§§ 53(b), 56(a)(2)(A), 56(a)(2)(B), 57b, and 1692*l*(a). Section 814 of the FDCPA further

authorizes the Commission to use all of the functions and powers of the Commission under the

FTC Act to enforce compliance by any person with the FDCPA, including the power to enforce

the provisions of the FDCPA in the same manner as if the violations were violations of a

Commission trade regulation rule. 15 U.S.C. § 1692*l*.

## DEFENDANTS

6.      Defendant Goldman Schwartz, Inc., also d/b/a/ Goldman, Schwartz, Lieberman & Stein, (Goldman Schwartz) is a Texas corporation incorporated in April 2011.  Goldman Schwartz's principal place of business is 10333 Harwin Drive, Suite 100, Houston, Texas 77036. Goldman Schwartz transacts or has transacted business in this district and throughout the United States.

7.      Defendant Debtcom, Inc., also d/b/a/ Cole, Tanner, & Wright, (CTW) is a Texas corporation incorporated in July 2002.  CTW's principal place of business is 10333 Harwin Drive, Suite 100, Houston, Texas 77036.  CTW transacts or has transacted business in this district and throughout the United States.

8.      Defendant Harris County Check Recovery, Inc. (HCCR) is a Texas corporation incorporated in August 2012.  HCCR's principal place of business is 10333 Harwin Drive, Suite 100, Houston, Texas 77036.  HCCR transacts or has transacted business in this district and throughout the United States.

9.      Defendant The G. Wright Group, Inc., also d/b/a The Wright Group, (The Wright Group) is a Texas corporation incorporated in 1998.  The Wright Group's principal place of business is 4531 Plantation Creek Drive, Missouri City, Texas 77459.  The Wright Group transacts or has transacted business in this district and throughout the United States.

10.     Defendant Gerald Wright, a/k/a Barry Schwartz, (Wright) is the owner and chief executive officer of Goldman Schwartz, CTW, and The Wright Group.   At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Goldman Schwartz, CTW, HCCR, and The Wright Group, including the acts and practices set forth in this Complaint.

Wright resides in this district, and, in connection with the matters alleged here, transacts or has transacted business in this district and throughout the United States.

11.     Defendant Starlette Foster, a/k/a Star Foster, (Foster) is the registered agent for and a director of Goldman Schwartz and CTW.  Foster is the top operations manager for Goldman Schwartz.  At all times material to this Complaint, acting alone or in concert with others, she has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Goldman Schwartz and CTW, including the acts and practices set forth in this Complaint.  Foster resides in this district and, in connection with the matters alleged here, transacts or has transacted business in this district and throughout the United States.

12.     Defendant Jennifer Zamora (Zamora) is a collections floor manager for Goldman Schwartz.  As a floor manager, Zamora actively collects debts from consumers in English and Spanish, and she also trains and supervises other Goldman Schwartz debt collectors.  At all times material to this Complaint, acting alone or in concert with others, she has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Goldman Schwartz, including the acts and practices set forth in this Complaint.  Zamora resides in this district, and, in connection with the matters alleged here, transacts or has transacted business in this district and throughout the United States.

13.     Defendants Goldman Schwartz, CTW, HCCR, and The Wright Group operate as a common enterprise engaged in the deceptive, abusive, and unlawful debt collection acts and practices alleged below.  Defendants conduct the business practices described below through an interrelated network of companies that have common ownership, officers, managers, business functions, employees, and office locations, and that commingle funds.  Because Defendants operate as a common enterprise, each of them is jointly and severally liable for the acts and

practices alleged below. Defendants Wright, Foster, and Zamora formulate, direct, control, have
the authority to control, or participate in the acts and practices of Defendants that constitute the
common enterprise.

## COMMERCE

14.     At all times material to this Complaint, Defendants have maintained a substantial
course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act,
15 U.S.C. § 44.

## DEFENDANTS' BUSINESS ACTIVITIES

15.     Since at least 2005, CTW has engaged in third-party debt collection of payday
loans and other consumer debts. CTW employed debt collectors who collected consumer debts
until approximately April 2011.

16.     In April 2011, Goldman Schwartz was incorporated. After the incorporation of
Goldman Schwartz, CTW employees became Goldman Schwartz employees. For at least four
months, CTW continued collecting certain accounts and performing work on CTW files using
Goldman Schwartz employees. Since at least April 21, 2011, and continuing thereafter,
Goldman Schwartz has engaged in third-party debt collection of payday loans and other
consumer debts. Goldman Schwartz employs up to 20 debt collectors at any given time who
collect consumer debts. Goldman Schwartz collects in English and Spanish.

17.     On August 30, 2012, HCCR was incorporated and began operating as a third-
party debt collection company. Wright and Goldman Schwartz established and operate HCCR's
website.

18.     Defendants collect debts for numerous payday loan companies, including Ace Cash Express, Advance America, Allied Cash Advance, Checkmate, First Cash Advance, and MoneyMart.

19.     CTW, Goldman Schwartz, and HCCR have functioned as successive operating companies that are part of a single common enterprise engaged in the collection of debts through interstate means including the use of telephones, electronic wire transfers, and the U.S. Postal Service.

**False Statements Used to Collect Debts, including Threatened Arrest and Legal Action**

20.     Defendants' collectors frequently use scare tactics to convince consumers to pay. Collectors routinely claim Defendants are a law office, law firm, or a litigation firm. These statements are false, yet occur on a daily basis. In fact, Wright personally claims to be an attorney to consumers and knowingly allows collectors to tell consumers Goldman Schwartz is a law office. Goldman Schwartz publicly solicits business, stating on its www.goldmanschwartz.com website that:

> The last call your debtor wants is from a lawyer's office giving them the legal alternatives if they don't pay you! Our legal staff will remind the debtor of the ramifications a lawsuit may involve, such as depositions, liens, writs of execution, and the waste of time and money spent on their attorney's hourly billing.
>
> Specializing in commercial collections, the legal staff of our legal collection office will approach your debtor from the legal point of view not allowed to traditional collection agencies. GOLDMAN SCHWARTZ has the legal muscle relationships to get you paid, typically with forty percent more bottom line than traditional agencies.

21.     In some instances, Wright, himself, tells consumers he is an attorney. Wright uses the alias Barry Schwartz when he claims to be an attorney working for Goldman Schwartz. In truth and in fact, Wright is not an attorney, and Defendants neither have a legal department, nor have employed persons to work as attorneys.

22.     Defendants' collectors routinely claim to be affiliated with, or working in conjunction with, government agencies or entities. For example, Defendants' collectors identified themselves as "detectives of the court," claimed to work "in conjunction with the Houston District Attorney's Office," and claimed to work "hand-in-hand" with local sheriff's offices, police departments, and a district attorney's office's hot check division. There is no organization named the Houston District Attorney's Office, and Defendants are not affiliated with the Harris County District Attorney's Office in Houston, Texas.

23.     Defendants' collectors routinely accuse consumers of committing crimes, call consumers "criminals," and tell consumers whose checks are returned due to insufficient funds that they "stole money" or committed felony "check fraud." Yet, under most states' laws, including Texas, drafting a post-dated check later returned for non-sufficient funds is not a crime, absent independent proof of intent not to cover the check. *See, e.g.*, Tex. Penal Code Ann. § 32.41(b) (West 2007).

24.     Defendants' collectors routinely threaten consumers that nonpayment of their debts will result in arrest, telling consumers things like "we can take you to jail," and "we'll send the sheriff's department to your job and take care of this the hard way." Sometimes Defendants' collectors tell consumers that if they do not pay Defendants by the next day or a specific time and date, then a warrant for their arrest will be issued. Other times Defendants' collectors threaten to press criminal charges or have consumers prosecuted.

25.     Defendants' collectors routinely claim that consumers' driver licenses will be "flagged," "prosecuted," or "suspended" and that consumers will be arrested and taken to jail if stopped by police.

26.     Sometimes Defendants' collectors falsely claim that when the consumers are arrested or taken to jail their minor children will be taken into government custody by police or child protective services.

27.     In truth and in fact, all of these accusations and threats are false because consumers have committed no crimes, and Defendants do not file criminal charges, do not seek arrest warrants, and lack a legitimate legal basis to do so.

28.     Defendants' collectors falsely claim that Defendants will file civil lawsuits against consumers. For example, collectors often say that if consumers do not pay the debt, then Defendants will be "taking it to court." Collectors also threaten consumers that if civil litigation is filed, their property could be taken away and they will have to pay Defendants' attorneys' fees and court costs when Defendants are successful. These false threats against consumers are consistent with Goldman Schwartz's website claims that Defendants will "remind the debtor of the ramifications a lawsuit may involve . . . ."

**Threatened and Actual Disclosure of Debts to Third-Parties**

29.     Defendants' collectors frequently threaten to contact consumers' employers and tell them that their employee committed check fraud. Defendants' collectors also tell members of the U.S. armed services that their failure to pay will be reported to their military superiors. In many instances these threats are false and used solely as a scare tactic.

30.     In other instances, Defendants' collectors, including Zamora, actually disclose the existence of debts to third parties, including consumers' employers, military superiors, and relatives. For example, Defendants' collectors sometimes call consumers' relatives, disclose the consumers' debts to the relatives, and even seek to collect the debts from them. Defendants also

use the friends and relatives to pressure or shame consumers into paying. In at least one instance, Defendants' collectors disclosed an alleged debt to a serviceman's military superior.

### Misrepresenting the Amount of Debt and Collecting Unauthorized Fees

31.     In some instances, the debts Defendants attempt to collect are not owed by the consumers they call. The consumers often orally dispute these debts or request written verification that they are due. Defendants' collectors ignore these disputes or requests for verification and repeatedly call the consumers, claim that the debts are due and payable, and threaten legal action against consumers who refuse to pay.

32.     In most instances, Defendants arbitrarily add additional fees to the debts. Foster adds an "Attorney's Fee" of $100 to $400 and a "Late Fee" of $50 to $100 to each debt. Around Defendants' office, these fees are referred to as "juice." These fees are not authorized by the loan agreements creating the debts. The so-called Attorney's Fee does not go to an attorney, and the Late Fee is not sent to the original creditor.

### Harassment and Abuse

33.     Some of Defendants' collectors and managers, including Zamora, use abusive language when collecting debts, such as calling female consumers "b*tch" or telling consumers they "need to make this f***ing payment." Defendants' collectors sometimes call consumers repeatedly with the intent to annoy, abuse or harass, such as immediately calling consumers back after they ended the previous call.

34.     Defendants' collectors sometimes make telephone calls to consumers prior to 8:00 a.m. and after 9:00 p.m. in the consumers' time zone.

### Failure to Provide Required Notice

35.     Defendants rarely, if ever, notify consumers orally or in writing about the consumers' right to dispute and obtain written verification of the debts. In addition, Defendants frequently fail to properly identify the source of the alleged debt, the original amount, and the basis for the asserted current amount.

### Wright, Foster, and Zamora Cause or Permit Defendants' Practices

36.     Defendants Wright, Foster, and Zamora created and allow a corporate culture permeated by lies, deception, and abuse.

37.     Defendants Wright, Foster, and Zamora personally engage in false, deceptive, harassing, and abusive collection practices. Wright deceives consumers by calling himself a lawyer. Foster inflates debts by adding juice. Zamora collects directly from consumers and participates in most of Defendants' deceptive and abusive practices.

38.     In many instances, Defendants Wright, Foster, and Zamora are aware that collectors under their control and supervision engage in deceptive and abusive collection practices. Defendants Wright, Foster, and Zamora each separately have the authority to control the conduct of Defendants' collectors. However, Defendants Wright, Foster, and Zamora allow the collectors involved to go unpunished, or simply give them meaningless warnings. Collectors are not suspended or terminated for violating the law. Instead of appropriately disciplining collectors who violate the law, Defendants sometimes reward them with better accounts to collect or promote them to supervisory positions. For example, Zamora was an abusive collector, yet she was promoted to collections floor manager.

39. Defendants' abusive, harassing, and threatening conduct frightens consumers and causes them significant worry, mental anguish, embarrassment, and stress. This conduct also causes problems at consumers' home and work.

40. In many instances, to avoid the dire consequences threatened by Defendants' collectors, consumers settle debts that they believe are grossly overstated by Defendants. In other instances, collectors coerce consumers to pay debts that they do not believe they owe.

41. Defendants accept a number of different payment methods, including credit cards, debit cards, electronic bank drafts, and cashier's checks. In some instances, consumers who agree to make payments are required to obtain a pre-paid debit card to make payments to Defendants.

**Defendants Change Names, Disguise Locations, and Hide Their Identities**

42. Wright owned and operated CTW prior to starting Goldman Schwartz. After CTW was sued,[1] Wright incorporated Goldman Schwartz and moved most of CTW's debt collections operations to Goldman Schwartz. This was not a change of location, just a change of name under a new corporate structure. However, for at least four months some CTW accounts were not transferred to Goldman Schwartz, and CTW collections continued on these accounts. During the transition and afterward, consumers sometimes became confused and called Goldman Schwartz to speak with someone about a debt being collected by CTW.

43. Defendants disguise their true business location. For example, Goldman Schwartz's letterhead and website list the company's main business address as 11152

---

[1] In the months prior to Wright forming Goldman Schwartz, CTW settled two lawsuits and was named in a third. *Ray v. Cole, Tanner, & Wright, Inc.*, No. 3:11-cv-00058 (N.D. Tex. Nov. 25, 2011) (consent judgment); *Horton v. Cole, Tanner, & Wright, Inc.*, No. 3:10-cv-02438 (N.D. Tex. Nov. 30, 2011) (agreed judgment); *Cardwell v. Cole, Tanner, & Wright, Inc.*, No. 2:11-cv-02094 (D. Kan. Feb. 15, 2011) (complaint).

Westheimer, Suite 116, Houston, Texas 77042. This is also the address Goldman Schwartz collectors orally give consumers to use to send their payments to the company. Although it appears to be a real business address, the Westheimer address is actually a UPS Store private mail box. HCCR provides no business address on its website.

44. Many consumers report Defendants' telephone numbers to Internet message boards and chat forums warning consumers about Defendants' abusive and illegal collection methods. Thus, to distance themselves from their prior collections activities, Defendants periodically change their telephone numbers. In some instances, after consumers recognize Defendants' phone numbers on Caller ID and stop answering the calls, Defendants' switch to cell phones that Caller ID identifies only as "wireless caller."

45. To disguise their identity and evade responsibility for their business activities, Defendants also periodically change the name of their debt collection company, but Defendants do not change their illegal business tactics. Consumers filed numerous complaints about CTW and Goldman Schwartz with the Commission, the Better Business Bureau, and the Texas Attorney General. These complaints demonstrate that CTW and Goldman Schwartz use similarly abusive collection practices. Although HCCR just began operations, the FTC is already receiving complaints against HCCR. The first complaints show a similar pattern of threats and abusive debt collection practices as those used by CTW and Goldman Schwartz.

### Combined Operations and Commingled Funds

46. CTW, Goldman Schwartz, and HCCR operate or have operated from the same address, 10333 Harwin Drive, Suite 100, Houston, Texas.

47. Wright is the sole owner of CTW, Goldman Schwartz, and The Wright Group. While CTW and The Wright Group are separately incorporated entities, the assumed names for

both are owned by Wright. CTW and Goldman Schwartz's in-house bookkeeper paid for HCCR's telephone account using a credit card bearing Wright's name.

48.     Goldman Schwartz employees disposed of some CTW documents, but still maintain other CTW documents in Goldman Schwartz's office. For a time, Goldman Schwartz employees also collected on CTW accounts. In addition, Goldman Schwartz and CTW use the same electronic payment processor, Authorize.net.

49.     Goldman Schwartz and CTW collected over $2.5 million dollars in the 30-month time period from January 2010 to June 2012. Corporate telephone and banking records prove that Goldman Schwartz, CTW, HCCR, and The Wright Group commingle their assets. For example, Defendants routinely transferred funds between Goldman Schwartz, CTW, and The Wright Group accounts. From July to September 2011, CTW transferred over $54,000 to Goldman Schwartz's operating account and over $47,000 to Goldman Schwartz's trust account. In addition, from October 2011 to May 2012, Goldman Schwartz transferred over $164,000 from its trust account to The Wright Group.

50.     Wright is the signatory for CTW, Goldman Schwartz, and The Wright Group accounts. Corporate banking records also reveal Wright freely uses corporate credit card and checking accounts for personal items. These personal payments from corporate accounts include monthly mortgage payments and property tax on his personal residence, and monthly payments for two Cadillacs.

## VIOLATIONS OF THE FTC ACT

51.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

52.     Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

### COUNT ONE
### False Statements Used to Collect Debts

53.     In numerous instances in connection with the collection of debts, Defendants represent, directly or indirectly, expressly or by implication, that:

(a)     Defendants are a law firm, or persons engaged as attorneys work at Defendants' office;

(b)     Gerald Wright, a/k/a Barry Schwartz, is an attorney;

(c)     Defendants' collectors are detectives, officers of the court, affiliated with a police or sheriff's department, or working in coordination with a district attorney's office;

(d)     consumers have committed a crime by having an unpaid debt or by issuing a post-dated non-sufficient funds check;

(e)     consumers will be arrested or jailed if they fail to promptly pay Defendants, and if arrested the consumers' minor children will be taken into the custody of the state by police or child protective services;

(f)     consumers' driver licenses will be suspended or "flagged" if they fail to promptly pay Defendants;

(g)    Defendants intend to take formal legal action, including seeking criminal prosecution, obtaining a warrant for arrest, or filing a lawsuit against consumers if they fail to promptly pay Defendants; and

(h)    the amount of the debt owed is the amount stated by Defendants.

54.    In truth and in fact:

(a)    Defendants are not a law firm, and no persons engaged as attorneys work at Defendants' office;

(b)    Gerald Wright, a/k/a Barry Schwartz, is not an attorney;

(c)    Defendants' employees are not detectives, officers of the court, affiliated with any police or sheriff's department, or working in coordination with any district attorney's office;

(d)    consumers have not committed a crime by having an unpaid debt or by issuing a post-dated non-sufficient funds check;

(e)    consumers will not be arrested or jailed if they fail to promptly pay Defendants; and the consumers' minor children will not be taken into the custody of the state by police or child protective services;

(f)    consumers' driver licenses will not be suspended or "flagged" if they fail to promptly pay Defendants;

(g)    Defendants do not intend to take formal legal action, including seeking criminal prosecution, obtaining a warrant for arrest, or filing a lawsuit against consumers if they fail to promptly pay Defendants; and

(h)    the amount of the debt owed is not the amount stated by Defendants.

55.     Therefore, Defendants' representations set forth in Paragraph 53 of this Complaint, are false and misleading and constitute deceptive acts and practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## VIOLATIONS OF THE FDCPA

56.     In 1977, Congress passed the FDCPA, 15 U.S.C. § 1692 *et seq.*, which became effective on March 20, 1978, and has been in force ever since that date.  Section 814(a) of the FDCPA, 15 U.S.C. § 1692*l*(a), provides that a violation of the FDCPA shall be deemed an unfair or deceptive act or practice in violation of the FTC Act, and authorizes the Commission to use all of its functions and powers under the FTC Act to enforce compliance with the FDCPA by any debt collector.

57.     Defendants are "debt collectors" as defined in Section 803(6) of the FDCPA, 15 U.S.C. § 1692a(6).

58.     A "consumer," as defined in Section 803(3) of the FDCPA, 15 U.S.C. § 1692a(3), "means any natural person obligated or allegedly obligated to pay any debt."

59.     A "debt," as defined in Section 803(5) of the FDCPA, 15 U.S.C. § 1692a(5), "means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."

60.     According to Section 814(a) of the FDCPA, 15 U.S.C. § 1692*l*(a), acts and practices that violate the FDCPA also constitute unfair or deceptive acts or practices in violation of the FTC Act.

## COUNT TWO
### False Statements Used to Collect Debts

61.     In numerous instances, in connection with the collection of debts, Defendants used false, deceptive, or misleading representations or means, in violation of Section 807 of the FDCPA, 15 U.S.C. § 1692e, including, but not limited to:

(a)     falsely representing or implying that Defendants were vouched for or affiliated with the United States or any State, such as claiming to be officers or detectives of the court, affiliated with a police or sheriff's department, or working in conjunction with prosecuting attorneys' offices, in violation of Section 807(1) of the FDCPA, 15 U.S.C. § 1692e(1);

(b)     falsely representing the character, amount, or legal status of a debt, or any services rendered or compensation which may be lawfully received by a debt collector for collection of a debt, such as adding unauthorized late fees and attorney's fees in violation of Sections 807(2)(A) and (B) of the FDCPA, 15 U.S.C. § 1692e(2)(A) and (B);

(c)     falsely representing or implying that that Defendants are attorneys or representatives of an attorney or that a communication is from an attorney in violation of Section 807(3) of the FDCPA, 15 U.S.C. § 1692e(3);

(d)     falsely representing or implying that that nonpayment of a debt will result in the arrest or imprisonment of any person, when Defendants have no intention of taking the asserted action or such action is not lawful, in violation of Section 807(4) of the FDCPA, 15 U.S.C. § 1692e(4);

(e)     threatening to take action that cannot be legally taken or that is not intended to be taken, such as threatening to file a lawsuit, seek criminal prosecution, obtain

warrants for arrest, and disclose the existence of a debt to third parties, in violation of Section 807(5) of the FDCPA, 15 U.S.C. § 1692e(5);

(f)     falsely representing or implying that a consumer committed a crime or other conduct in order to disgrace the consumer, in violation of Section 807(7) of the FDCPA, 15 U.S.C. § 1692e(7); and

(g)     falsely representing or using deceptive means to collect or attempt to collect a debt or to obtain information concerning a consumer, such as claiming that consumers' minor children will be taken by police or by child protective services, and claiming that consumers' driver licenses will be suspended or "flagged" if they fail to promptly pay Defendants, in violation of Section 807(10) of the FDCPA, 15 U.S.C. § 1692e(10).

## COUNT THREE
### Disclosure of Debts to Third Parties

62.     In numerous instances, in connection with the collection of debts, Defendants communicate with third parties for purposes other than acquiring location information about consumers, without obtaining directly the prior consent of the consumer or the express permission of a court of competent jurisdiction, and when not reasonably necessary to effectuate a postjudgment judicial remedy, in violation of Section 805(b) of the FDCPA, 15 U.S.C. § 1692c(b).

## COUNT FOUR
### Collection of Unauthorized Fees

63.     In numerous instances, in connection with the collection of debts, Defendants used unfair or unconscionable means to collect or attempt to collect a debt, including, but not limited to, collecting amounts, including any interest, fee, charge, or expense incidental to the

principal obligation, not expressly authorized by the agreement creating the debt or permitted by law, in violation of Section 808(1) of the FDCPA, 15 U.S.C. § 1692f(1).

## COUNT FIVE
### Harassment and Abuse

64.     In numerous instances, in connection with the collection of debts, Defendants engaged in conduct the natural consequence of which is to harass, oppress, or abuse a person, in violation of Section 806 of the FDCPA, 15 U.S.C. § 1692d, including, but not limited to:

(a)     Using obscene or profane language or language the natural consequence of which is to abuse the hearer, in violation of Section 806(2) of the FDCPA, 15 U.S.C. § 1692d(2); and

(b)     Causing a telephone to ring or engaging a person in telephone conversation repeatedly or continuously with the intent to annoy, abuse, or harass a person at the number called, in violation of Section 806(5) of the FDCPA, 15 U.S.C. § 1692d(5).

## COUNT SIX
### Failure to Provide Required Notices

65.     In numerous instances, in connection with the collection of debts, Defendants failed to notify consumers of their right to dispute the debts, to obtain verification of their debts, and to obtain the name of the original creditor, either in Defendants' initial communication with consumers or within five days thereafter, in violation of Section 809(a) of the FDCPA, 15 U.S.C. § 1692g(a).

## COUNT SEVEN
### Abusive Calling Outside of FDCPA Allowed Times

66.     In numerous instances, in connection with the collection of debts, Defendants communicated with a consumer at a time or place that Defendants knew or should have known to

be inconvenient to the consumer, including times before 8:00 a.m. or after 9:00 p.m. local time at the consumer's location, in violation of Section 805(a)(1) of the FDCPA, 15 U.S.C. § 1692c(a)(1).

## CONSUMER INJURY

67.     Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act and the FDCPA. In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

68.     Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the Commission. The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the Commission.

69.     Section 19 of the FTC Act, 15 U.S.C. § 57b, and Section 814(a) of the FDCPA, 15 U.S.C. § 1692l(a), authorize this Court to grant such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FDCPA, including the rescission or reformation of contracts, and the refund of money.

## PRAYER FOR RELIEF

Wherefore, Plaintiff Federal Trade Commission, under Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57b, and the FDCPA, and the Court's own equitable powers, requests that the Court:

A.      Award Plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including, but not limited to, temporary and preliminary injunctions, an order freezing assets, expedited discovery, immediate access to business premises, and appointment of a receiver;

B.      Enter a permanent injunction to prevent future violations of the FTC Act and the FDCPA by Defendants;

C.      Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act and the FDCPA, including, but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies; and

D.      Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Respectfully submitted,

DAVID SHONKA
Acting General Counsel

DEANYA T. KUECKELHAN
Regional Director

Dated: January 14, 2013

THOMAS B. CARTER, Attorney-in-Charge
Texas Bar No. 03932300
Southern District of Texas Bar No. 239381
ERIC ROBERSON
Texas Bar No. 00792803
Southern District of Texas Bar No. 20890
LUIS GALLEGOS (pending *pro hac vice*)
Oklahoma Bar No. 19098

Federal Trade Commission
1999 Bryan Street, Suite 2150
Dallas, Texas 75201
(214) 979-9372; tcarter@ftc.gov
(214) 979-9362; eroberson@ftc.gov
(214) 979-9383; lgallegos@ftc.gov
(214) 953-3079; (fax)

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION